# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 97-KA-01175 COA

**LARRY GATLIN A/K/A LARRY D. GATLIN**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/1997 |
| TRIAL JUDGE: | HON. SHIRLEY C. BYERS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. KELLY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | FIRST DEGREE ARSON: APPELLANT SENTENCED TO THIRTEEN YEARS IN THE CUSTODY MDOC |
| DISPOSITION: | AFFIRMED - 12/18/1998 |
| MOTION FOR REHEARING FILED: | 1/26/99 |
| CERTIORARI FILED: | 6/2/99 |
| MANDATE ISSUED: | |

BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.

PAYNE, J., FOR THE COURT:

## PROCEDURAL HISTORY

¶1. Larry Gatlin was indicted by the November, 1996 Washington County Grand Jury for the crime of first degree arson. On June 5, 1997, he was tried by a jury and found guilty as charged. On August 27, 1997, he was sentenced to thirteen years in the Mississippi Department of Corrections. Feeling aggrieved, he perfected his appeal.

## FACTS

¶2. Attorney Clell Ward owned a home which he rented to Ms. Lee Reed. The house was completely destroyed by fired on March 12, 1996. Billy Clark, who had been the fire marshall for the City of Greenville for twenty-three years, testified that an accellerant was used by the individual who started the fire. It was his opinion that the fire was not accidental in nature.

¶3. Kenneth King, Gatlin's cousin, testified that he picked Gatlin up on the morning of March 12, 1996. He stated that he took Gatlin to Lee Reed's house so that Gatlin could get his wallet and some other papers. King further noted that Gatlin walked into the house and came out, without his wallet. Also, King stated that Gatlin did not take any liquid accellerant into Lee Reed's house. He stated that when he and Gatlin left Reed's house, they did not speed away or in any way attempt to conceal their movements.

¶4. Lee Reed testified that she and Gatlin were engaged. Further, she testified that she had known Gatlin for about three years. She stated that her relationship was progressing well until she told Gatlin that she had cheated on him. According to Reed, her relationship with Gatlin had not been good several days before the house fire. Reed did note that both Larry's clothes and her clothes, along with their three children's clothes were in the house at the time of the house fire. Reed also advanced the idea that she believed Gatlin was not the individual who committed the crime of arson.

¶5. Barbara Colley testified that she had a conversation with Larry Gatlin prior to the house fire. According to her testimony, Larry told her that he was going to do something to Lee Reed that she (Lee Reed) was going to regret.

## ISSUES PRESENTED

## I. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE SINCE THE STATE OF MISSISSIPPI FAILED TO PROVE GATLIN GUILTY BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS.

¶6. Gatlin bases his first citation of error on the weight of the evidence and the sufficiency of the evidence. Since an argument on the sufficiency of the evidence requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the circuit court overruled Gatlin's motion for a JNOV. *See Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987). The standard of review for a JNOV is the same as for a directed verdict. *James v. Mabus*, 574 So. 2d 596, 600 (Miss. 1990). Both motions for directed verdict and motions for a JNOV challenge the legal sufficiency of the evidence. *Noe v. State*, 616 So. 2d 298, 302 (Miss. 1993). Where a defendant moves for a JNOV, the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence. *McClain v. State* 625 So. 2d 774, 778 (Miss. 1993).

¶7. Gatlin also argues that the verdict was against the weight of the evidence. When reviewing an argument based upon the weight of the evidence, we do not look toward the sufficiency of the evidence presented. *May v. State*, 460 So. 2d 778, 871 (Miss. 1985). The jury bears sole responsibility for determining the weight and credibility of evidence. *Id.* Therefore, a new trial is appropriate only where a verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand, would be to sanction unconscionable injustice. *Wetz v State*, 503 So. 2d at 812. We will reverse and order a new trial only if, accepting as true all evidence favorable to the prosecution, we determine that the trial court abused that

discretion. *McClain*, 625 So. 2d at 778.

¶8. In the instant case, Gatlin did not testify, nor did he present any witnesses on his behalf. What testimony we do have is limited to the information tendered by the State's witnesses -- this being a reiteration of the "facts" section above.

¶9. Ultimately, Gatlin maintains his innocence and states that he was found guilty on little more than innuendo and supposition, though testimony places him in the area where the individual who started the house fire would have had to be. The jury heard, analyzed, and reviewed the testimony as proffered by each witness, examined the appearance and demeanor of each witness, and consolidated all of the testimony for a final determination against Gatlin.

¶10. Given that the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence, and given the function of the jury, and our reluctance to disturb their decision on appeal, coupled with testimony relating to what occurred, we find this citation of error to be without merit.

## II. WHETHER THE COURT ERRED IN PREVENTING A LINE OF QUESTIONING SPECIFICALLY INTENDED TO DEMONSTRATE TO THE JURY THAT OTHERS HAD A MOTIVE TO COMMIT ARSON AND THAT THERE WAS, THEREFORE, A REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE.

¶11. As his final argument, Gatlin insists that he should have been allowed to pursue his line of questioning Lee Reed regarding her family in order to establish that Quincy Reed, Lena Reed, and Robert Reed all had histories of violence. Lee Reed testified that two of her brothers lived in the house with her as well as her mother, the three children, and Gatlin. When Gatlin's attorney began to question Lee about her brother Robert and whether he had been in trouble with the law, the State objected. The objection was sustained.

¶12. If the defense attorney's point in this line of questioning was to allude to the fact that criminals lived in her house, that point was made. At the time Lee Reed was questioned about Robert, it had already been established that her mother now resided in Pearl, Mississippi, with the Mississippi Department of Corrections and that her brother Quincy was locked up in the county jail.

¶13. According to Gatlin, had his defense counsel been allowed to pursue his line of questioning, it would have been established that Gatlin had no history or tendency to commit the crime of arson. In other words, the thrust of his argument is that someone with motive, other than himself, could have committed the crime of arson. Essentially, it is his belief that if another person who lived in the house had motive to burn the house, that information would be probative and pivotal to his defense. He insists that his due process rights were abridged.

¶14. The State argues that Gatlin was not seeking to show motive of others. Rather, the State insists that Gatlin was attempting to show that others had the opportunity to commit the crime. As the State accurately points out, M.R.E. 401 defines "relevant evidence" as evidence having any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 403 provides that although relevant, "evidence may be excluded if

its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."

¶15. Gatlin did not at trial, nor does he on appeal, provide persuasive argument which would tend to show how this line of questioning would have yielded anything of relevance. Accordingly, we agree with the State that the trial judge was correct in sustaining the State's objection and denying Gatlin the opportunity to attempt to mislead the jury. That being said, this argument has no merit.

¶16. **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF FIRST DEGREE ARSON AND SENTENCE OF THIRTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY $500 TO CRIME VICTIM COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO WASHINGTON COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR.**